Argued March 15, affirmed May 23, 1974

SITZMAN ET AL, *Appellants, v.* JOHN HANCOCK
MUTUAL LIFE INSURANCE COMPANY,
*Respondent.*

522 P2d 872

*Douglas G. Houser,* Portland, argued the cause for appellants. With him on the briefs were Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland; and Peter R. Mersereau, Portland.

*John M. Berman,* Portland, argued the cause for respondent. With him on the brief were Herbert H.

Anderson, and Dezendorf, Spears, Lubersky & Campbell, Portland.

## BRYSON, J.

This is an action by an insured for dismemberment benefits under a group insurance policy. Judgment was rendered for defendant after the court sustained a demurrer to plaintiff's complaint on the ground it failed to state a cause of action. The plaintiff appeals.

Plaintiff, an insured and minor dependent of Deane D. Sitzman, was injured in a vehicular collision. He submitted a claim to defendant which was denied. Plaintiff commenced this action under the dismemberment clause of the policy alleging:

"\* \* \* \* \*.

"IV.

"Under the terms of said policy Defendant insured dependents of Deane D. Sitzman against the accidental loss of both feet in the amount of $50,000, if the loss of both feet was caused by actual severance through or above the ankle joint.

"\* \* \* \* \*.

"VII.

"As a result of said accident, Plaintiff Robert Sitzman's spinal cord was severed causing both legs to be paralyzed.

"VIII.

"As a result of the severance of his spinal cord, Plaintiff has permanently lost the use of both of his feet.

"\* \* \* \* \*."[1]

---

[1] Plaintiff did not allege that plaintiff's legs or feet were physically injured, cut, or severed in any manner.

Defendant issued a group insurance policy for accidental death and dismemberment and total disability to the Oregon Bankers Association, under which plaintiff's father was insured, and in which the plaintiff was named as a dependent insured. Plaintiff is expressly excluded from total disability coverage and is eligible for accidental death and dismemberment indemnity only. The material provisions of the policy provide:

"Accidental Death and Dismemberment Indemnity. If the Insured Person, as a result of an injury (as defined herein) suffers any of the losses described below, within 90 days after the date of the injury, the Company shall pay in one sum the amount of insurance specified for such loss in the following Schedule of Indemnities * * *.

"Full Amount of Insurance [$50,000] for Loss of

"* * * * *

"Both Feet

"* * * * *

"Loss of hands or feet shall mean loss by *actual severance through or above the wrist or ankle joint* * * *. [Emphasis added.]

"* * * * *

"Total Disability Benefit

"*(This Benefit shall not apply to any person who is insured under the Policy as a dependent.)*" (Original emphasis.)

The plaintiff contends:

"*EVEN IF NOT VIEWED AS AMBIGUOUS, THE POLICY LANGUAGE 'SEVERANCE THROUGH OR ABOVE THE ANKLE JOINT' IS SUFFICIENTLY BROAD TO EMBRACE FUNCTIONAL SEVERANCE.*" (Original emphasis.)

Plaintiff argues that although there was no actual severance of the feet above the ankle joint, there is in fact a "functional severance." In support of this argument plaintiff relies principally on *Reliance Ins. Co. v. Kinman*, 252 Ark 1168, 483 SW2d 166 (1972), and the cases of *Huff v. Vulcan Life and Accident Insurance Co.*, 281 Ala 615, 206 So 2d 861 (1968), and *Crawford v. Lloyds London*, 275 Cal App 2d 524, 80 Cal Rptr 70 (1969), cited in *Kinman*.

In *Kinman*, the plaintiff "suffered the loss of a foot in an accident. * * * The appellant [insurance company] refused to pay the claim on the basis that appellee's foot was not actually severed within the time limitation of 180 days." The principal issue was if the actual severance occurred within the 180-day limitation. At the time of the accident plaintiff's "leg muscles, tendons, deep, or major, veins were torn apart and the leg was connected to the body only by the sciatic nerve, and artery, some muscle tissue and skin." At the trial the doctor testified "that 'medically, in retrospect, it [leg] was lost from the time of the initial injury. * * *'" The doctors tried to reassemble the parts of the leg but were unsuccessful and subsequently it was amputated. The Arkansas court held the policy language "actual severance" to be ambiguous, stating:

> "* * * It may, as demonstrated above, be interpreted to mean 'physical severance' in one instance and 'functional severance' in another whichever appears to be most beneficial to appellant. * * *" 252 Ark at 1176.

We believe it was not necessary for the Arkansas court to discuss or hold that the language of the policy was ambiguous. In that case it was merely a question

of when the leg was severed and the facts of that case indicate that it was severed at the time of the accident.

In *Huff,* the plaintiff, while operating a power saw, cut his arm "leaving only a little portion of skin remaining on the under part of the arm to connect the two portions of the arm." The doctors tried to save the dangling portion of the arm but were unsuccessful, and the forearm and hand were amputated more than 90 days from the date of the accident, the time named in the insurance policy. Again, the Alabama Supreme Court held that the arm was severed on the date of the initial injury, or at least it was a question for the jury to determine.

In *Crawford,* the court held that the trial court erred in sustaining defendant's demurrer to the complaint on the ground that the complaint did not state facts sufficient to constitute a cause of action. The facts are that the plaintiff suffered a crushing and mangling of his left hand that required emergency surgery. The surgery performed included a major portion of the left hand and "[t]he portion of the left hand remaining is useless and impairs his ability to utilize a prosthetic device." The appellate court stated:

> "We reverse the judgment of the trial court and in so doing hold that as plaintiff's injury resulted in amputation of all usable portions of his left hand commencing at the wrist joint he suffered a total loss of limb by physical separation of the limb at the wrist joint." 275 Cal App 2d at 527.

It is plain from the above that each of these cases are distinguishable on the facts from the case at bar. In those cases there was good reason to believe that for all practical purposes there was a dis-

memberment. This is not pleaded or contended in the case at bar. In fact, the complaint states that the plaintiff's spinal cord was severed and he lost the use of both feet.

The plaintiff also relies on *Moore v. Aetna Life Ins. Co.,* 75 Or 47, 146 P 151 (1915), where "[t]he plaintiff was accidentally shot in the hand, necessitating the removal of all the bones of the hand at the wrist except the metacarpal bone of the thumb. * * * The medical witness stated that in his opinion it would have been better to have removed what remained of the thumb, so that plaintiff could have had an artificial hand." The policy covered "loss of hand by removal at or above the wrist." This court reviewed the leading cases cited to support the defendant insurance company's contention at that time and stated:

> "* * * They may be divided into three classes: (a) Where no part of the hand or foot has been severed, but where it has become useless by reason of an injury to some other part of the body, as in the case of the man who was paralyzed by being shot in the back; (b) where some portion of the injured member has been severed, but some useful portion still remains, * * * [citations omitted]; (c) where there was an injury requiring the amputation of a comparatively small part of the injured member, the larger portion remaining but practically useless. * * *" 75 Or at 52.

The court held, in *Moore,* that the facts did not fit any of these three exceptions as a defense for the defendant and found that the injury constituted a dismemberment.

We conclude from the court's reasoning in *Moore* that it is inapplicable to the case at bar, other than to lend support to the defendant's position.

The plaintiff also contends that "the exclusionary language in the policy is ambiguous," and that this ambiguity should be resolved in favor of the plaintiff. We assume, from the brief, that reference is not made to the exclusionary language, but rather to the use of the words "actual severance." The only exclusionary language affecting plaintiff is that portion of the policy which states, "This Benefit shall not apply to any person who is insured under the Policy as a dependent," in reference to "total disability benefit." Plaintiff argues "that the loss of use of his legs is just as real from a paralysis with the severance of the spinal cord as it would be from the amputation of the feet themselves," and that the plaintiff never intended or understood that "loss by severance through or above the ankle joint" meant that coverage would be provided only if the feet themselves had been cut off above the ankle. In this respect, plaintiff relies upon *Chalmers v. Oregon Auto Ins. Co.*, 262 Or 504, 500 P2d 258 (1972), involving loss of personal property by theft from premises wherein plaintiff contended to be covered by the policy as a "temporary residence" then in "actual use" by plaintiff. In *Chalmers* we held:

> "In addition, we must also bear in mind that while the primary rule of contract interpretation, including insurance contracts, is to ascertain the intent of the parties, if possible, it is nevertheless established in Oregon that when a policy of insurance is ambiguous it 'should be construed * * * in the sense in which the insured had reason to suppose it was understood.' [Citations omitted]

> "Viewed in the light of these considerations, we hold that the terms 'temporary residence' and 'actual use' are ambiguous in a legal sense in that they are general terms which could have been intended to have been used in a more or less narrow

or broad sense, depending upon the intention of the parties. Cf. *Gowans v. N.W. Pac. Indemnity Co.,* 260 Or 618, 489 P2d 947 (1971)." 262 Or at 509.

We agree that insurance policies, when they contain ambiguous language, must be construed in the sense in which the insured had reason to suppose it was understood, but we can find no justifiable reason in the case at bar to support a supposition by the insured that actual severance through or above the ankle joint also means severance of the spinal cord with resultant loss of use of the insured's feet without any physical injury other than loss of motor function. Most courts have held that such language as employed in the insurance policy is unambiguous and requires severance of the member at the place designated in the policy. For discussion, see 87 ALR2d at 485.

In his complaint plaintiff seeks to obtain disability benefits for the loss of "the use of both of his feet," but we cannot so construe the plain and unambiguous language of the insurance contract involved herein, and we cannot rewrite the insurance policy or construe the same beyond its clear language.

Affirmed.