AURELIAN ROY *v.* ALLSTATE INSURANCE COMPANY

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 338

Argued January 20—decided April 1, 1977

*John W. Lemega,* for the appellant (defendant).

*James J. Szerejko,* for the appellee (plaintiff).

ANTHONY J. ARMENTANO, J. In consideration of an annual premium of $36 the defendant issued to the plaintiff a policy of insurance providing certain accidental death and dismemberment benefits. The plaintiff made a claim for accidental dismemberment benefits which the defendant refused to pay and this action was brought. After a trial to the court, judgment was rendered for the plaintiff from which the defendant has appealed.

The trial court's finding reveals that on May 22, 1973, while an accidental death and dismemberment policy issued to the plaintiff by the defendant was in effect, the plaintiff suffered an accidental injury to his right eye. As a result of the injury the plaintiff sustained corneal abrasions, traumatic hyphema, traumatic dislocation of the right lens and secondary glaucoma to the right eye. When the plaintiff

returned to work, approximately five weeks after the accident, he had no vision in his right eye. On November 7, 1973, a traumatic cataract was surgically removed from the plaintiff's right eye.

In April or May of 1974 the plaintiff was fitted with a contact lens. At that time the plaintiff could wear the contact lens for a maximum of four hours a day. The contact lens allowed the plaintiff to have some vision in his right eye. Shortly after the contact lens was fitted but subsequent to May 22, 1974, however, the plaintiff stopped wearing the lens because he was unable to get used to it. As of May 28, 1974, a doctor who had examined the plaintiff concluded that his eye injury amounted to a permanent disability. Another doctor reported that, should the plaintiff be unable to tolerate wearing the contact lens, for whatever reason, his right eye would be of little functional value.

The policy issued by the defendant to the plaintiff provided for the payment of $2500 for the loss of the sight of one eye. The policy defined "loss" to mean the "total and irrecoverable loss of [the] entire sight of [an] eye." The policy further provided that the total and irrecoverable loss of sight had to result within 365 days after the date of an accident occurring while the policy was in effect.

The primary issue raised by this appeal is whether the trial court erred in concluding that the plaintiff sustained a loss within the coverage provided by the insurance policy issued by the defendant. The defendant argues that, although the plaintiff may have sustained a total loss of sight within 365 days after the accident, he did not sustain an irrecoverable loss of sight because his sight was "restored" by the use of a prosthetic device within the 365-day period.

"[A]n insurance policy is a contract to be interpreted and enforced in accordance with the real intent of the parties. *Lyon* v. *Aetna Casualty & Surety Co.*, 140 Conn. 304, 307 . . . . The language used in the policy must be given its ordinary meaning unless some special or technical meaning is intended. Ibid.; *Smedley Co.* v. *Employers Mutual Liability Ins. Co.*, 143 Conn. 510, 513 . . . ." *Rathbun* v. *Aetna Casualty & Surety Co.*, 144 Conn. 165, 168. In considering the meaning of the phrase "irrecoverable loss of sight," we must ascertain the meaning of the contract which the insured would reasonably expect; see *Lewis* v. *Metropolitan Life Ins. Co.*, 65 Mich. App. 279; and consider the intent of the insured in procuring the insurance. *Morgan* v. *Prudential Ins. Co.*, 86 Wash. 2d 432.

It has been held generally that policies which insure against the total and irrecoverable loss of entire sight protect the insured against the irrecoverable loss of the practical use of sight. *Locomotive Engineers Mutual Life & Accident Assn.* v. *Vandergriff*, 192 Ark. 244; *Clark* v. *Standard Accident Ins. Co.*, 43 Cal. App. 2d 563; *Lewis* v. *Metropolitan Life Ins. Co.*, 397 Mich. 481; annot., 87 A.L.R.2d 481, 486–94; 15 Couch, Insurance (2d Ed.) § 53:25. "Practical use does not necessarily mean use in a particular calling or occupation, but rather that use which will render practical service in respect to many needs and pleasures." *Clark* v. *Standard Accident Ins. Co.*, supra, 567. Recently, the word "irrecoverable," as used in an insurance contract similar to the one in this case, was defined to mean *"not* able to regain [put back to a former state, or recapture]." *Equitable Life Assurance Society of the United States* v. *Short*, 165 Ind. App. 338, 344. Therefore, we hold that an insured should recover under this

kind of insurance contract if, within the period of time limited by the policy, he has, owing to an accident, lost the practical use of an eye which he will never be able to regain or recapture.

The facts found by the trial court support its judgment for the plaintiff in accordance with this holding. Two doctors who examined the plaintiff concluded that he had sustained a permanent disability and that his right eye was of little functional value without the use of the contact lens. Without the contact lens which the plaintiff first started to wear in April or May, 1974, he had no vision in his right eye. The longest period of time during which the plaintiff could wear the contact lens in any given day in April or May, 1974, was four hours. Sometime after May 22, 1974, he stopped wearing the contact lens because he was unable to get used to it.

Even if we were to consider only what transpired until the anniversary of the accident, May 22, 1974, we would hesitate to conclude that the plaintiff's ability to have some functional vision in his right eye for a maximum of four hours per day was equivalent to the recovery of the practical use of sight in that eye. In any event a continuous loss of functional use of the eye came about when the plaintiff concluded some time later, for reasons which are not challenged, that he could no longer wear the contact lens and stopped using it. Although the defendant claims that that subsequent occurrence is irrelevant in determining whether the plaintiff sustained a "total and irrecoverable loss" of sight within a year after the accident, as provided by the policy, we disagree. The finding indicates no change in the physical condition of the eye after the anniversary date of the accident. The trial court could reasonably have inferred from the subsequent discovery that the plaintiff could not continue to use

the lens and that his loss of sight, which he previously may have thought could be regained by use of the lens, was never actually recoverable because of his inability to wear the lens. There is no support in the finding for any claim that the plaintiff's ability to tolerate wearing the lens had diminished at the time he ceased its use. The conclusion of the trial court that the loss of sight in the plaintiff's right eye was irrecoverable was, therefore, based upon the plaintiff's condition as it existed within the year after the accident even though the plaintiff was not fully aware of his condition until later. Any view that the loss was recoverable would necessarily rest upon the assumption that the plaintiff would continue to be able to wear the contact lens indefinitely, not just until a short time after the anniversary of the accident. It can hardly be contended that the plaintiff is barred from a recovery because the error of that assumption did not become evident until afterward.

It is clear that the average man purchasing a policy similar to the one in this case would reasonably expect to be insured for an injury to his eye of the type involved in this case where, within the period of coverage, vision could be restored only to the limited extent that it was restored here. The cases relied upon by the defendant, including *Wallace* v. *Insurance Company of North America,* 415 F.2d 542 (6th Cir.), and *Home Life Ins. Co. of New York* v. *Stewart,* 114 F.2d 516 (10th Cir.), are distinguishable because those cases barred recovery by the insured only where it was shown that use of a prosthesis restored functional or normal vision.

There is no error.

In this opinion PARSKEY and D. SHEA, Js., concurred.