Andrew L. CUNNINGHAME,
Plaintiff-Appellee,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES,
Defendant-Appellant.

No. 1309, Docket 81–7076.

United States Court of Appeals,
Second Circuit.

Argued April 22, 1981.

Decided June 29, 1981.

Michael W. Brody, New York City (Werner Weinstock, New York City, Marsh, Day & Calhoun, Bridgeport, Conn., of counsel), for defendant-appellant.

Eric J. Lieberman, Chicago, Ill. (William L. Arnold, Arnold & Hennessy, Chicago, Ill., Regnier, Taylor, Curran & Langenbach, Hartford, Conn., of counsel), for plaintiff-appellee.

Before LUMBARD, OAKES, and KEARSE, Circuit Judges.

PER CURIAM:

This diversity case requires us to determine how the courts of Connecticut would interpret the terms of a group accidental death and dismemberment insurance policy under which appellee Andrew L. Cunninghame brought suit to collect damages for an injury to his spinal cord. Even if we view this insurance policy as a contract of adhesion and, therefore, construe it in a manner most favorable to Cunninghame, the policy simply does not cover Cunninghame's tragic injury. Accordingly, we must reverse the judgment of the United States District Court for the District of Connecticut, Warren W. Eginton, Judge, Civ. No. B–77–124 (D.Conn. Jan. 7, 1981).

## BACKGROUND

Cunninghame was insured under a group accidental death and dismemberment policy issued by appellant, The Equitable Life Assurance Society of the United States, to the Raytheon Company, Cunninghame's employer. On December 3, 1972, Cunninghame fell from a ladder and sustained a compression fracture of his spine resulting in what is commonly called a "severed" spinal cord. This is a permanent injury which has resulted in the total loss of motor control and sensation in both legs. There are no prospects that Cunninghame will ever regain the use of either of his legs.

The Equitable insurance policy covered losses of "life," "two hands," "two feet," "sight of two eyes," and certain other injuries, each in the principal sum of $100,000. But the policy specifically provided that:

> With regard to hands and feet, loss shall mean dismemberment by severance at or above wrist or ankle joints respectively; with regard to eyes, total and irrecoverable loss of sight.

Thus, when Cunninghame demanded payment of accidental dismemberment benefits, Equitable refused, contending that the policy only covered actual, physical separation of limb from body, rather than functional or practical loss of use. Cunninghame then commenced this action in Illinois state court to recover damages under the insurance policy. The case was removed to the federal forum on diversity grounds, *see* 28 U.S.C. §§ 1332, 1441, and thereafter transferred at the request of Equitable to the district court in Connecticut, *see* 28

U.S.C. § 1404(a), the state where Cunninghame resides, works, and suffered the accident at issue.[1]

The district court first pointed out that there were no dispositive decisions by the highest court in Connecticut relating to the scope of coverage of a policy such as this. The court then relied upon an intermediate appellate case in Connecticut sustaining an insurance claim for the functional loss of vision in one eye within 365 days after the date of the accident, *Roy v. Allstate Insurance Co.*, 34 Conn.Supp. 650, 383 A.2d 637 (Super.Ct.1978). In the *Roy* case, the policy at issue had provided for the payment of $2500 for the loss of the sight of one eye and the policy had defined "loss" to mean the "total and irrecoverable loss of [the] entire sight of [an] eye" within that time period. 383 A.2d at 638. The Connecticut court had held that the insured should recover under the policy because he had "lost the practical use of an eye which he will never be able to regain or recapture." *Id.* at 639. On this basis, Judge Eginton in the case at bar concluded that the highest Connecticut court would adopt a practical as opposed to a literal interpretation of the Equitable insurance policy. On the theory that the severance of Cunninghame's spinal cord was, for all practical purposes, equiva-

lent to the severance of his feet, the court below entered judgment in Cunninghame's favor. Equitable challenges this position on appeal, arguing that the clear and unambiguous language of the contract mandates dismissal of the complaint.

## DISCUSSION

When there is an absence of state authority on an issue presented to a federal court sitting in diversity, as has occurred here, the federal court must make an estimate of what the state's highest court would rule to be its law. *In re Leasing Consultants Inc.*, 592 F.2d 103, 109 (2d Cir. 1979); *Holt v. Seversky Electronatom Corp.*, 452 F.2d 31, 34 (2d Cir. 1971); *see Cooper v. American Airlines, Inc.*, 149 F.2d 355, 359 (2d Cir. 1945). Under Connecticut law, the terms of an insurance policy are to be interpreted according to the general rules of contract construction. *Simses v. North American Co. for Life and Health Insurance*, 175 Conn. 77, 84, 394 A.2d 710, 713 (1978); *Roy v. Allstate Insurance Co.*, 34 Conn.Supp. 650, 383 A.2d 637, 638 (Super.Ct.1978). If the terms of the policy are clear and unambiguous, then the language must be given its natural and ordinary meaning. *Simses*, 175 Conn. at 84, 394 A.2d at 714; *Weingarten v. Allstate Insurance*

1. The Supreme Court, in *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 821, 11 L.Ed.2d 945 (1964), held that "where the *defendants* seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue." (Emphasis added.) Under *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), therefore, the Connecticut federal court first should have applied Illinois law, including Illinois conflicts law. Because Illinois conflicts law follows the general principles of *Restatement (Second) of Conflict of Laws* (1971), *see, e. g., Hofeld v. Nationwide Life Insurance Co.*, 59 Ill.2d 522, 322 N.E.2d 454 (1975), Connecticut local law then applies in interpreting the Equitable policy.

In contracts of casualty insurance, if as here the contract does not have a choice-of-law provision, then the principal location of the insured risk is given particular emphasis in determining the choice of the applicable law. *See Restatement, supra* at § 193. This is so because location has an intimate bearing upon

the nature of the risk and the parties would naturally expect the local law of the state where the risk is to be principally located to apply. *See, e. g., Exchange National Bank v. Insurance Co. of North America*, 341 F.2d 673, 675 (2d Cir.), *cert. denied*, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965); *Grand Sheet Metal Products Co. v. Aetna Casualty & Surety Co.*, 500 F.Supp. 904, 909 (D.Conn.1980). Moreover, the state where the insured risk will be principally located during the term of the policy has an interest in the determination of issues arising under the insurance contract.

Cunninghame worked in Connecticut for Machlett Laboratories, Inc., the name of the employer on the Equitable insurance policy. Even though the "Stipulation as to Facts" in this case states that the policy was issued not to Machlett but to Raytheon Company, which is a Delaware corporation located in Massachusetts, Machlett is a division of Raytheon and the fact that Cunninghame worked in Connecticut is sufficient under the Restatement to ensure that Connecticut local law applies.

*Co.,* 169 Conn. 502, 509, 363 A.2d 1055, 1059 (1975). The issue in this case, then, is whether the language, "loss shall mean dismemberment by severance at or above wrist or ankle joints," is clear or ambiguous. We believe that the Connecticut courts would find the language to be clear; it could not refer to any thing other than actual, physical separation of the feet from the rest of the body.

■ The word "dismemberment" itself implies actual separation; the noun derives from the transitive verb "dismember," defined as meaning "to cut or tear off or disjoin the limbs, members, or part of" or "to tear into pieces: take apart roughly or divide (a whole) into sections or separate units" or, obsoletely, to "lop" or "sever." *Webster's Third New International Dictionary* 652 (unabridged ed. 1971). "Dismemberment" as a noun, therefore, refers to "the act of dismembering or the state of being dismembered: division into separate parts or units." *Id.* Furthermore, "severance" is defined as "the act or process of severing," *id.* at 2081, and derives from "sever," meaning "to put asunder," "to disjoin or disunite from one another," "to keep separate or apart," "to divide or break up into parts," "to cut in two: sunder, cleave," *id.* at 2080. Thus, "dismemberment by severance" has to mean in our view some actual, physical separation; the use of two words essentially expressing the same idea strikes us as unambiguous draftsmanship by an abundantly cautious lawyer. And when added to this phrase is the clause "at or above wrist or ankle joints," it would seem plain that the policy had the limited scope which we ascribe to it.

We do not consider the *Roy* case, on which the district court relied, as strong evidence that Connecticut would construe the language here to be ambiguous or to cover the functional loss of use of the feet. The language of the insurance policy in that case is significantly different from the language here. The phrase from the policy in *Roy*—"total and irrecoverable loss of [the] entire sight of [an] eye"—is itself a functional test referring to loss of the use of the organ in question rather than the physical elimination of that organ. Had the policy in *Roy* required, say, enucleation of the eye rather than just "loss of sight," then it would be equivalent to the policy in the instant case. Moreover, the word "irrecoverable" is much less objectively instructive than the phrase "dismemberment by severance." *See Galindo v. Guarantee Trust Life Insurance Co.,* 91 Ill.App.3d 61, 46 Ill.Dec. 543, 414 N.E.2d 265 (1980); *Juhlin v. Life Insurance Co. of North America,* Minn., 301 N.W.2d 59 (1980); *Sitzman v. John Hancock Mutual Life Insurance Co.,* 268 Or. 625, 522 P.2d 872 (1974) (en banc). In *Roy,* although the plaintiff may have sustained a total loss of sight within 365 days after the accident, he apparently did not sustain an irrecoverable loss of sight within that period because his sight was "restored" by the use of a contact lens. But after the expiration of the 365 day time limitation in the policy, the plaintiff could no longer tolerate the lens and the court concluded that plaintiff's loss of sight was never actually recoverable because of his inability to wear the lens. Thus, the precise holding in *Roy* went to the recoverability of the loss of sight.

In any event, the qualification of "loss" by the phrase "dismemberment by severance" in the instant case simply makes *Roy* inapplicable, leaving us no choice but to conclude that the policy here does not cover Cunninghame's unfortunate accident. Finally, the fact that the Connecticut court in *Roy* cited with approval a "hand severance" case, *Morgan v. Prudential Insurance Co. of America,* 86 Wash.2d 432, 545 P.2d 1193 (1976) (en banc), is of little moment. The court's holding in *Morgan* in favor of the insured on a policy requiring "loss by severance of both hands at or above the wrists" was predicated upon a finding of "substantial severance" of the insured's hands. In the case at bar there was never any physical separation of any part of the feet from the rest of the body. Accordingly, we believe that Connecticut would follow cases such as *Sitzman v. John Hancock Mutual Life Insurance Co.,* 268 Or. 625, 522 P.2d 872 (1974) (en banc) ("severed" spinal cord

resulting in paralysis of limbs not within scope of coverage afforded for "loss [of both feet] by actual severance"). Indeed, the language of the policy in the instant case is even more explicit.

Judgment reversed.