**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT B. FIER,
              *Plaintiff-Appellant,*

v.

UNUM LIFE INSURANCE CO. OF
AMERICA,
              *Defendant-Appellee.*

No. 09-17520

D.C. No.
2:06-cv-01162-
RLH-LRL

OPINION

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, Chief District Judge, Presiding

Submitted December 8, 2010*
San Francisco, California

Filed January 4, 2011

Before: David R. Thompson, Robert E. Cowen, and
Barry G. Silverman, Circuit Judges.**

Per Curiam Opinion

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

**COUNSEL**

Steven J. Parsons, Las Vegas, Nevada, and Douglas K. deBries, Sacramento, California, for the plaintiff-appellant.

Von S. Heinz, Las Vegas, Nevada, for the defendant-appellee.

## **OPINION**

PER CURIAM:

Robert B. Fier appeals the district court's denial of benefits under two insurance policies that he purchased from Unum Life Insurance Company of America (Unum) while working at the Boyd Group. *Fier v. Unum Life Ins. Co. of Am.*, No. 2:06-cv-01162-RLH-LRL, 2009 WL 3644187 (D. Nev. Nov. 3, 2009). Both policies are maintained pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. We have jurisdiction under 28 U.S.C. § 1291. Reviewing the district court's legal conclusions de novo and its factual findings for clear error, *Metro. Life Ins. Co. v. Parker*, 436 F.3d 1109, 1113 (9th Cir. 2006), we affirm.

I.

Fier began repairing casino slot machines for the Boyd Group in 1987, later earning a promotion to a managerial position. After his promotion, Fier enrolled in the Boyd Group's benefits program for managers, including the two Unum policies at issue in this appeal: a Group Long Term Disability Policy (the LTD policy) and a Group Life and Accidental Death and Dismemberment Insurance Policy (the AD&D policy).

In 1992, a drunk person shot Fier in the throat at a hunting lodge in Utah. The shot severed Fier's spinal cord at the C6 level, leaving him permanently quadriplegic. Fier was able to return to work at the Boyd Group in early 1993. He worked in a new position tailored to accommodate his many physical limitations, but earned the same salary he received before the accident. In 1997, the Boyd Group assigned Fier to a new position and reduced his salary by $20,000.

Fier submitted a claim for benefits under the LTD policy in March 1997. Between late 1997 and late 2004, Unum paid

Fier a total of $152,069.02. In late 2004, Unum informed Fier that his claim had not been payable since 1998, when Fier left the Boyd Group and began earning a salary comparable to what he received before the accident. Unum determined Fier was ineligible for benefits under a paragraph in the LTD policy titled "Termination of Disability Benefits," which provides:

> Disability benefits will cease on the earliest of:
>
> 1.  the date the insured is no longer disabled;
>
> 2.  the date the insured dies;
>
> 3.  the end of the maximum benefit period;
>
> 4.  the date the insured's current earnings exceed 80% of his pre-disability earnings.

*Fier*, 2009 WL 3644187, at *5. The district court found, and Fier does not dispute, that he earned greater than eighty percent of his pre-disability earnings between 1993 and 1997, and from 1998 onward. *See id.* at **7-8.

Fier filed suit in the District of Nevada for backpay of benefits from 1993 to 1997 and for a declaratory judgment that he is entitled to continuing payment of benefits. The district court found that Fier was ineligible for benefits from 1993 to 1997, and from 1998 onward, when his income exceeded eighty percent of his pre-injury earnings.[1] The court also found that Fier was not currently insured under the LTD policy because he no longer worked at the Boyd Group. Finally, the district court rejected Fier's claim for benefits under the

---

[1] Unum counterclaimed for reimbursement of approximately $140,000 in alleged overpayment under the LTD policy for the years 1998 to 2004. The district court found Unum did not establish entitlement to reimbursement, and Unum does not appeal this ruling.

AD&D policy, concluding he was ineligible because his hands and feet were not physically severed from his body.

## II.

### 1.   The Group Long Term Disability Policy

The district court correctly determined that Fier was ineligible for benefits under the LTD policy from 1993 to 1997, and from 1998 onward.

We "interpret terms in ERISA insurance policies in an ordinary and popular sense as would a [person] of average intelligence and experience." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990) (internal quotations omitted). We will "not artificially create ambiguity where none exists." *Id.* (internal quotations omitted).

[1] The LTD policy's paragraph titled "Termination of Disability Benefits" states that "[d]isability benefits will cease on the earliest of: . . . the date the insured's current earnings exceed 80% of his pre-disability earnings." *Fier*, 2009 WL 3644187, at *5. This provision unambiguously serves to terminate "disability benefits" at the time an insured person earns greater than eighty percent of his pre-disability earnings.[2]

---

[2]Fier argues that the LTD policy is ambiguous and that the district court failed to apply the rule of *contra proferentem*, "under which ambiguities in a contract are construed against the contract's drafter." *See Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 905 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 3508 (2010). However, to the extent the LTD policy's "Termination of Disability Benefits" paragraph creates any ambiguity, it is as to whether the paragraph terminates only "disability" benefits, or both "disability" and "partial disability" benefits. In Fier's case, both interpretations of the paragraph lead to the same result. If Fier is "disabled," as he contends, he is ineligible under the plain language of the termination paragraph. If the paragraph does not apply to "partial disability" benefits, Fier is nevertheless ineligible because he does not meet the definition of "partial disability," which requires that an insured earn at least twenty percent less than his pre-disability earnings. In either case, Fier could not recover benefits between 1993 and 1997, and from 1998 onward.

Fier was an insured person and received "disability benefits" under the LTD policy from 1997 until 2004. He does not challenge the district court's finding that he earned greater than eighty percent of his pre-disability earnings from 1993 to 1997, and from 1998 onward. Under the plain terms of the LTD policy, Fier is ineligible for continuing benefits, and he is ineligible for backpay of benefits during the specified years.

[2] The district court was also correct in finding that Fier's coverage under the LTD policy terminated when he left the Boyd Group in 1998. The LTD policy provides that "[a]n employee will cease to be insured on the earliest of the following dates: . . . . 5. the date employment terminates." *Id.* at *9. Fier concedes that he left the Boyd Group, "causing the LTD policy to possibly terminate." Appellant's Opening Br. at 43. He maintains he is nevertheless eligible for benefits under a separate provision of the policy stating that "[t]ermination of this policy under any conditions will not prejudice any payable claim which occurs while the policy is in force." *Id.* Fier's argument is essentially an extension of his contention that Unum's obligation to pay benefits did not cease under the "Termination of Disability Benefits" paragraph. *See supra*. But because Fier became ineligible for disability benefits in 1998, he does not have "any payable claim" under which to demand additional benefits.

2.  *The Group Life and Accidental Death and Dismemberment Insurance Policy*

Fier also challenges the district court's conclusion that his AD&D policy requires an insured to have his hands or feet at least partially "cut off." *See Fier*, 2009 WL 3644187, at *10. The relevant portion of the policy provides for a lump sum payment in the event an insured loses both hands or both feet. The policy defines "loss" as follows:

> For hands or feet, "loss" means dismemberment by severance at or above the wrist or ankle joint.

*Id.* at *9.

**[3]** Fier argues that although his hands and feet remain physically attached to his body, he has lost them from a functional standpoint due to the "severance" of his spinal cord. This circuit has not yet construed the terms "dismemberment by severance" in an ERISA plan. We now interpret those terms to require physical removal of the limbs.

**[4]** In *Cunninghame v. Equitable Life Assurance Society of the United States*, 652 F.2d 306, 307 (2d Cir. 1981) (per curiam), the plaintiff's AD&D policy defined "loss" of hands or feet as "dismemberment by severance at or above wrist or ankle joints respectively." As in Fier's case, the plaintiff in *Cunninghame* had suffered a severed spinal cord resulting in paralysis. *Id.* The plaintiff urged the court to award benefits because he had lost the use of his legs from a functional standpoint. *Id.* The Second Circuit concluded the policy's definition of "loss" was unambiguous and construed the terms "dismemberment by severance" as follows:

> The word "dismemberment" itself implies actual separation; the noun derives from the transitive verb "dismember," defined as meaning "to cut or tear off or disjoin the limbs, members, or part of" or "to tear into pieces: take apart roughly or divide (a whole) into sections or separate units" or, obsoletely, to "lop" or "sever." "Dismemberment" as a noun, therefore, refers to "the act of dismembering or the state of being dismembered: division into separate parts or units." Furthermore, "severance" is defined as "the act or process of severing," and derives from "sever," meaning "to put asunder," "to join or disunite from one another," "to keep separate or apart," "to divide or break up into parts," "to cut in two: sunder, cleave[.]" Thus, "dismemberment by severance" has to mean in our view some actual, physical separation; the use of two words essentially express-

> ing the same idea strikes us as unambiguous drafts-
> manship by an abundantly cautious lawyer. And
> when added to this phrase is the clause "at or above
> wrist or ankle joints," it would seem plain that the
> policy had the limited scope which we ascribe to it.

*Id.* at 309 (internal citations to dictionary omitted). We agree with and adopt this reasoning. Reading the AD&D policy's language in its "ordinary and popular sense," *Evans*, 916 F.2d at 1441, the terms "dismemberment by severance" are unambiguous and require "actual, physical separation." *See Cunninghame*, 652 F.2d at 309. Because Fier did not suffer the physical detachment of his limbs, Unum does not owe him benefits under the AD&D policy.

**AFFIRMED.**