HARRY SNECK, Appellant, *v.* THE TRAVELERS' INSURANCE COMPANY of Hartford, Connecticut, Respondent.

*Accident insurance — " loss by severance of one entire hand " — where there is only partial amputation, but total inability to use it — a question for the jury.*

The provisions in a contract of insurance will be strictly construed against the insurer, and when its terms admit of more than one construction that construction will be adopted which supports the validity of the policy.

A person injured by an accident brought an action upon an insurance policy which provided that "if loss by severance of one entire hand " should result from bodily injuries, arising from causes enumerated in the policy, the insured should become entitled to receive one-third of the face of the policy in lieu of a weekly indemnity of ten dollars for a period not to exceed twenty-six weeks. The medical testimony offered on the trial thereof tended to show that about one-half of the plaintiff's hand, anatomically considered, was cut off by a planer; but there was also testimony to the effect that the rest of the hand was absolutely useless.

The trial court held that the plaintiff had not suffered a loss by severance of an entire hand, and that he could not recover.

*Held,* that inasmuch as some men might conclude from the evidence that, for all practical purposes to which a hand is adapted, there was an entire loss of the use thereof, while others might consider that neither in its anatomical construction nor in its practical use as a hand was it entirely destroyed, the question was one of fact for the jury; and that it was erroneous for the court to decide it as a matter of law.

LEWIS, J., dissenting.

APPEAL by the plaintiff, Harry Sneck, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Monroe on the 21st day of January, 1895, upon the verdict of a

jury, rendered by direction of the court after a trial at the Monroe Circuit.

*Howard W. Sneck,* for the appellant.

*Satterlee, Yeoman & Taylor,* for the respondent.

WERNER, J. :

This action was brought upon a policy of insurance issued by the defendant to the plaintiff, by the terms of which the latter was to receive a weekly indemnity of ten dollars, for a period not exceeding twenty-six weeks, for bodily injuries producing disabilities and resulting from causes enumerated in the policy. It was further provided in said policy that "*if loss by severance of one entire hand or foot*" should result from such injuries alone, the insured should within ninety days be entitled to receive one-third of the principal sum of $2,000 named in the policy in lieu of such weekly indemnity.

The plaintiff claims under this latter condition of the policy, and upon the first trial of this action he was permitted to recover, upon the theory that he had suffered the "loss by severance of one entire hand." Upon appeal by the defendant to this court the judgment entered at Circuit was reversed and a new trial ordered. The case was retried at the Monroe Circuit held in January, 1895, and at the close of plaintiff's case and upon defendant's motion a verdict was directed in favor of the plaintiff for $110, that being the weekly indemnity provided for in the policy at the rate of ten dollars per week for eleven weeks.

The injury complained of was concededly due to the accidental causes enumerated in the policy.

The evidence upon the last trial as to the nature of the injury, so far as it relates to the anatomical structure of the hand and the extent to which amputation was made, is substantially the same as it was upon the former trial    There is a marked difference, however, in the evidence given to show the degree of disability, or extent of the loss of use of the hand, resulting from the injury and amputation.

Upon the former trial the plaintiff gave evidence which tended to show that he had considerable use of the portion of the hand

which was left, and plaintiff's surgeon testified: "The fingers and the heads of all the metacarpal bones were cut off with a planer. * * * A little over half the hand, speaking anatomically, is gone. There are twenty-seven bones in the skeleton of the hand; thirteen bones are entirely gone and parts of five more. The parts of the five are simply the heads of the metacarpal bones and (the head of) the middle bone of the thumb."

He further testified, in substance, that the portion of the hand which remains is more useful than if the amputation had been at the wrist, and that it could be used for certain purposes.

Upon the last trial the plaintiff testified substantially that he had no use of the injured member as a hand, and never had since the accident, although admitting that upon the former trial he had probably testified that he could use it to place under and against objects for the purpose of lifting and pushing. He now attempts to explain these admissions as follows: "But I didn't exactly mean the hand. I mean the whole arm. I don't use the hand. I use the arm. I do not mean the portion I exhibited to the jury. I mean the arm, not the hand."

The physician who was called by the plaintiff upon the last trial in speaking of the condition of this hand gave substantially the same anatomical description of its condition as was given upon the former trial. But, in speaking of its use, he testifies: "Nothing can be done with it; none of that for which the phalanges were used, nothing can be grasped with it, what remains of that hand; absolutely nothing." He had no use of the hand.

These summarized extracts from the testimony taken upon both trials will suffice to show that, so far as the opinion of this court upon the former appeal was based upon evidence showing the extent to which plaintiff had lost the use of the injured hand, it is not controlling here. That the prevailing opinion upon that appeal did not rest entirely upon the terms or construction of the contract, but was predicated to some extent upon evidence showing the use to which the injured hand could be put, is clearly evident from the context thereof.

It seems our duty, therefore, to consider the case upon the evidence now presented, and to apply thereto the principles which control contracts of this character. It may be conceded for the pur-

poses of this discussion that if the language of this policy is to be construed in its strictest and most literal sense then plaintiff's claim to compensation for "loss by severance of one entire hand" cannot be sustained, and the disposition of the case made by the trial court must be upheld. If, on the contrary, we are to give effect to the contract according to the ordinary and fair meaning of the terms employed, then we must consider the question whether the evidence was such that it became the duty of the trial court to prevent plaintiff's recovery upon this claim by directing a verdict for the weekly indemnity provided for in another clause of the policy.

Let us then briefly consider the rules of interpretation which must be applied to this contract.

"Words in a policy of insurance must be taken in their ordinary sense as commonly used and understood; and if the sense in which they were used is uncertain, as they are found in a contract prepared and executed by the insurer, they should be construed most favorably to the insured." (*Herrman* v. *Merchants' Insurance Co.*, 81 N. Y. 184.)

The character and purpose of the contract must be considered, and if there is any doubt as to the true meaning of any of its terms it must be interpreted in the sense in which the insured had reason to suppose it was understood. (*Hoffman* v. *Ætna Insurance Co.*, 32 N. Y. 413.)

In *Darrow* v. *Family Fund Society* (116 N. Y. 537) the court states the rule in the following language: "For the purpose of upholding the contract of insurance its provisions will be strictly construed as against the insurer. * * * When its terms permit more than one construction that one will be adopted which supports its validity. * * * And it is only when no other is permissible by the language used that a construction which works a forfeiture will be given to such an instrument."

Looking at this contract in the light of these rules we think it is not unreasonable to hold that the understanding to indemnify the insured against "*loss by severance of one entire hand*" has reference not alone to an injury which involves the loss or requires the amputation of the "entire hand" in a strictly anatomical sense, but that

the effect as well as the extent of the loss by severance is to be con-
sidered in determining whether within the terms of the contract the
" entire hand " is gone.

To require the insured to submit to a strictly literal inter-
pretation of the contract prepared for him by the insurer, without
regard to the purpose of the contract or the understanding thereof
by the parties, would be to hold that only in case of the severance
of the entire hand in a most acurately anatomical or technical sense
could the insured recover under the clause of the policy. We do
not believe that such a conclusion is required in the present case.
The term " entire hand " is to be taken in its general acceptation and
ordinary meaning. In construing this contract the law does not
require an injury which comes within a strictly accurate and techni-
cal definition of the words employed, but one which reasonably,
fairly and practically comes within the meaning of the terms
employed in their general and usual meaning and acceptation.

In a contract of insurance providing for indemnity for the loss
of a limb, the compensation to be paid is not merely for the physical
pain of its amputation, but principally for the deprivation of its use
as a member of the body. It would seem to be an extremely narrow
and technical construction of this contract to say that only a physical
removal of every particle of that portion of the human anatomy
known as the hand would entitle the insured to recover under the
clause of the policy now under consideration. Is it not more rea-
sonable and logical to conclude that in the use of the language above
referred to the " entire hand," as a part of the human structure, is
considered in connection with the use to which it is adapted and the
injury which the loss of such use would entail? Is it not also fair
to assume that this was regarded by the parties as the sense in which
the contract was to be understood, and was one of the considerations
which influenced the insured to enter into the contract? An affirm-
ative answer to these questions brings into harmony the language
and the intent of the parties to the contract, eliminates from the
case any seeming difficulty arising from purely technical definitions
and brings it fairly within the rule of *Sheanon* v. *Pacific, etc.,
Insuranc   Co.* (71 Wis. 618; 20 Am. St. Rep. 151), which is, in
some respects, similar to this case.

The condition of the policy in that case was that the company

should pay if the insured should "suffer the loss of the entire sight of both eyes, or the loss of two entire hands, or two entire feet, or one entire hand and one entire foot." The plaintiff suffered paralysis of his lower limbs caused by being shot in the back. The court held that the loss of the use of his feet from this accidental cause was within the provision of the policy which entitled him to recover.

The difference between that case and this is that here the policy provides that the loss must be occasioned by "severance," while in that case there was no specification as to the manner of the loss, except that it must be accidental. But we think this specification in the policy before us is intended to refer to the manner rather than to the exact physical extent of the injury.

The foregoing propositions necessarily involve, as a logical sequence, the inquiry whether the evidence upon the trial was of such a character that the court was right in holding that plaintiff had not suffered the loss "by severance of one entire hand," and, therefore, was not entitled to recover under this clause of the policy.

We think the learned trial court erred in assuming this to be its duty. If our reasoning is sound, the effect as well as the extent of the amputation was a proper subject for consideration at the trial.

The evidence, which was not the same as upon the former trial, was such that, under the rules here applied, different views might be entertained upon the question whether the plaintiff had suffered the loss of an entire hand. To the minds of some men it would warrant the conclusion that, for the practical purposes to which the use of the hand is adapted, there was an entire loss of the use of it, while to others it might seem, after an inspection of the hand and a consideration of the evidence, that neither in its anatomical construction, nor in its practical use as a hand, was it entirely destroyed.

Unless the evidence settled this question beyond dispute, it was the province of the jury to decide it under proper instructions from the court as to the legal principles which govern the construction and effect of such contracts. We think this course should have been pursued, and are, therefore, constrained to reverse the judg-

ment appealed from and grant a new trial, with costs to abide the event.

WARD, J., concurred; LEWIS J., dissented; BRADLEY, · J., not voting.

Judgment reversed and new trial granted, costs to abide the event.