FEINMAN v. ALBERT MFG. CO. et al.   (No. 280–136.)

(Supreme Court, Appellate Division, Third Department.   November 10, 1915.)

MASTER AND SERVANT ☞250¾, New, vol. 16 Key-No. Series—INJURIES TO
    SERVANT—WORKMEN'S COMPENSATION ACT—LOSS OF FINGER—"LOSS."
    Workmen's Compensation Act (Consol. Laws, c. 67) § 15, subd. 3,
fixes two-thirds of 25 weeks' salary as the full compensation for the loss
of a third finger, and provides that in all other cases of this class of dis-
ability the compensation shall be 66⅔ per cent. of the difference between
the employé's average weekly wages and his wage-earning capacity there-
after, payable during the continuance of such partial disability.   Plain-
tiff suffered an accident necessitating amputation of the third finger of
the left hand at the first phalange, which was followed by cellulitis of the
joints, so that the remainder became practically useless.   *Held*, that the
finger must be deemed to have been lost, although not actually amputated,
and hence the entire amount that could be recovered was that prescribed
for loss of a finger.
    [For other definitions, see Words and Phrases, First and Second Series,
Loss.]

Appeal from Workmen's Compensation Commission.

Proceedings by Annie Feinman, under the Workmen's Compensation
Law, to recover for personal injuries against the Albert Manufacturing
Company, employer, and the Zurich General Accident & Liability In-
surance Company, Limited, insurer.   From an award of the Work-
men's Compensation Commission, defendants appeal.   Reversed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD,
and WOODWARD, JJ.

Alfred W. Andrews, of New York City, for appellants.

Jeremiah F. Connor, of New York City, for Workmen's Compensa-
tion Commission.

Egburt E. Woodbury, Atty. Gen. (Harold J. Hinman, Deputy Atty.
Gen., of counsel), for respondent.

WOODWARD, J.   The claimant was employed by the Albert Manu-
facturing Company as a sewing machine operator in the manufacture
of underclothing.   While thus employed, on or about the 11th day of
September, 1914, she was accidentally injured by a needle puncturing
her third finger, followed by blood poisoning, which necessitated the
amputation of the third finger of her left hand at the first phalange.
This appears to have been followed by cellulitis of the joints, so that
the third finger has become practically useless.   The Commission ap-
pears to have had the claim before it on various occasions, making al-
lowances and holding the same open for further consideration, with the
result that the claimant has been paid for the injuries to this finger the
statutory allowance for 25 weeks, the full compensation provided for
the total loss of a third finger, and at the last recorded action of the
Commission, taken on the 26th of April, 1915, the claimant was award-
ed $10.26, and the claim department was instructed to hold this case
in abeyance until the appeal is decided by the courts, when the case
should be placed upon the calendar for the total amount of the disabil-

ity. The theory of the claimant, which seems to be shared by the Commission, is that, the finger not having been actually severed above the first phalange, the claimant has not lost the third finger, but that she is to be considered as coming within the provisions of the subdivision of section 15 of the Workmen's Compensation Law which provides for "other cases," and which provides that:

"In all other cases in this class of disability, the compensation shall be sixty-six and two-thirds per centum of the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the commission on its own motion or upon application of any party in interest."

The result of this contention, if acquiesced in, would be that where a person has lost the entire use of a finger, only a portion of which is amputated, he would be entitled to a larger compensation (or might be) than one who has suffered the absolute amputation of the entire finger. The law in that case provides that the compensation shall be 66⅔ per centum of the average weekly wages for a period of 25 weeks (subdivision 3, section 15), while if this injury, resulting in the amputation of the first phalange and the practical uselessness of the remainder of the finger, is held to bring the case within the "other cases," the claimant may go on indefinitely drawing 66⅔ of her average weekly wages. We cannot believe the Legislature has intended such a result.

The argument is that, the Legislature having provided for specific compensation "for the loss of a third finger," and having specially provided that the permanent loss of the use of a hand, arm, foot, leg or eye shall be considered as the equivalent of the loss of such hand, arm, foot, leg or eye," the statute is to be construed so as to exclude a case like the present, where a portion of the finger has been amputated and the remainder of the finger has become useless. We think this is not the true construction of the statute; that "loss of a third finger" may be just as real, where it is rendered wholly useless, as though it had been physically taken away; and that the law does not contemplate payment for a third finger in excess of the sum which is provided for the loss of an entire finger under any circumstances, where the injury does not extend beyond the finger. The statute liberally provides that the loss of one phalange shall be equivalent to the loss of one-half of the finger, and that the loss of more than one phalange shall be equivalent to the loss of an entire finger, and this court has given a liberal construction to these provisions; but now it is proposed to establish the rule that if one phalange is amputated, and the remainder of the finger is thereby rendered useless, that there has not been a loss of the finger, and that it is not, therefore, covered by the specific provisions of the statute. In other words we are asked to hold that the word "loss," as used in the statute, requires the actual amputation of the finger, and that in the absence of such amputation the claimant is entitled, or may be, to have more compensation than would be the case if the member was severed. If this is true, then if the claimant had had the first phalange and a slight portion of the second phalange removed, although the same result had followed to the remainder of her finger, she would be

limited to the amount fixed for the loss of an entire finger, but because the surgeon saved a half inch more of the finger she claims to be entitled to compensation because of a partial permanent disability, which is certainly not greater than would have been the case if a half inch more had been taken away.

The courts of this state, in construing policies of insurance, have not given such a narrow construction to the word "loss," and we are of the opinion that the contention of the claimant cannot be sustained without discrediting the system, for it opens the way to fraud. In Sneck v. Travelers' Ins. Co., 88 Hun, 94, 34 N. Y. Supp. 545, the policy under consideration provided that if "loss by severance of one entire hand" should result from bodily injuries, arising from causes enumerated in the policy, the insured should become entitled to receive one-third of the face of the policy in lieu of a weekly indemnity of $10 for a period not exceeding 26 weeks. The trial of the case disclosed that, anatomically considered, about one-half of the plaintiff's hand had been cut off by a planer, while the remainder of the hand was rendered useless as a hand, or at least there was testimony which would have warranted the jury in so finding; but the trial court ruled that, as there had not been a loss by severance of the entire hand, the plaintiff was not entitled to recover under the policy, and dismissed the complaint. Upon appeal to the General Term the court held that inasmuch as some men might conclude from the evidence that, for all practical purposes to which a hand is adapted, there was an entire loss of the use thereof, while others might consider that neither in its anatomical construction nor in its practical use as a hand was it entirely destroyed, the question was one of fact for the jury, and that it was erroneous for the court to decide it as a matter of law. This case went to the Court of Appeals, where it was affirmed on the opinion below. 156 N. Y. 669, 50 N. E. 1122.

In that case a contract was under consideration, and the ruling was in favor of the plaintiff, and while it did not hold that the question presented was one of fact, it is to be observed that the contract provided for a case of "loss by severance of one entire hand," while in the statute now under consideration it merely provides for the case of "the loss of a third finger," and the statute provides that the loss of more than one phalange shall constitute the loss of the entire finger. Where there has been an actual amputation of a portion of the first phalange, and this has rendered the remainder of the finger useless as a finger, it seems to us as a matter of law that there has been a loss of the entire finger, for it is the "loss of more than one phalange," and this the statute itself declares to be equivalent to the loss of the entire finger.

In the case of Sheanon v. Pacific Mutual Life Ins. Co., 77 Wis. 618, 46 N. W. 799, 9 L. R. A. 685, 20 Am. St. Rep. 151, cited with approval in Sneck v. Travelers' Ins. Co., supra, where the plaintiff was shot in the back while attempting to escape from a fight which had been started by third persons, resulting in immediate paralysis of both legs, the court, in holding that the insured had suffered "the loss of two entire feet" within the meaning of the policy, says:

"To our minds the loss of the hands and feet embraced in the policy is an actual and entire loss of their use as members of the body; that if their

use is actually destroyed, so that they will perform no function whatever, then they are lost as hands and feet. In ordinary and popular parlance, when a person is deprived of the use of a limb, we say he has lost it. This is the ordinary sense attached to the word when used in such a connection. * * * The expression 'loss of feet' would generally be understood to mean a loss of the use of those members; and if the lower portions of the plaintiff's body and his feet are completely paralyzed, and he is permanently and forever deprived of their use, he has suffered a 'loss of two entire feet,' within the meaning of the policy. This is the proper construction of the words of the contract. It is a forced and unnatural construction of the language, as here used, to hold that it means an actual amputation of these limbs, and does not embrace and include an entire deprivation of their use as members of the body."

In the case at bar a reasonably liberal construction gives the claimant the benefit of a loss of a third finger, where she still retains a considerable portion of it, which may be of more or less use to her; but to extend this construction to enable her to get more for this useless finger than she would be entitled to if the judgment of the surgeon had called for taking away a trifle more of the finger is absurd, and opens the way to fraud and litigation, where it was the purpose of the statute to eliminate both.

The award and order appealed from should be reversed, and further compensation denied. All concur.

