JOHN H. GALLINGER, Respondent, *v.* COMMERCIAL CASUALTY INSURANCE COMPANY, Appellant.

Fourth Department, December 18, 1928.

*Gibbons & Pottle* [*Frank Gibbons* of counsel], for the appellant.

*Tuttle, Rice & Stockwell* [*Glenn A. Stockwell* of counsel], for the respondent.

TAYLOR, J. Plaintiff is the insured under one of defendant's accident insurance policies.

The policy contained the following " standard provision:"

" Section A. This policy includes the indorsements and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the company's classification of risks and premium rates in the event that the insured is injured or contracts sickness after having changed his occupation to one classified by the company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the company will pay only such portion of the indemnities provided in the policy as premium paid would have purchased at the rate but within the limits so fixed by the company for such more hazardous occupation."

Defendant had duly filed in the office of the State Superintendent of Insurance an accident and health manual, which concededly was a part of the policy. Under the heading " Lumber Mill or Yard Employees " appears the following:

" Proprietor, or manager mill, office duties and traveling only * * * Preferred, Limit of risk * * * $10,000.00. Proprietor, or manager mill, suptg. only * * * Ordinary — Limit of Risk * * * $5,000.00."

Both the " Standard Provision " and the " Manual " were pleaded in the answer.

In his application for insurance plaintiff stated: " I am member of the firm Ayers-Witmer Lumber Company, whose business is that of general lumber and mill business. My occupation is Superintendent. The duties of my occupation are fully described as follows: Office duties only." The record shows that plaintiff not only had duties to perform in the office proper of the company, but that he was frequently going through and about the company's mill and shop, inspecting machinery and work, giving orders, seeing that work was turned out promptly, and the like. It does not appear that he did any manual labor. While plaintiff was in the mill inspecting a new band saw which was being put in operation, a rubber tire on a wheel tore in two and the end struck plaintiff in the eye. The policy covered irrecoverable loss of the entire sight of either or both eyes, and contained a separate provision for payment of weekly indemnity for time lost.

The following are the main points in controversy: (a) Did plaintiff make material, false representations in his application for the policy; (b) what was plaintiff's occupational classification under the policy; (c) was the sight of one eye entirely lost through the mishap; (d) when plaintiff accepted a payment of $18.57 weekly indemnity, and signed a written release, did he absolve defendant from all liability under the policy? By its general verdict, the jury, in substance answered " (c) " in the affirmative, and " (a) " and " (d) " in the negative.

After the learned court had charged the jury, defendant's attorney took several specific exceptions to the court's charge, one being directed to the court's statement that if the jury found that plaintiff was entitled to recover anything for the damage to his eye, he was entitled to recover one-third of $12,000 as a " preferred " risk under the manual filed. Defendant's counsel then requested the court to charge as a matter of law that the plaintiff, at the time of his injury, was " superintending only," was an " ordinary " risk under the manual, and could recover no more than $2,000. This was declined. This we regard as error. For at the time plaintiff was injured he was " doing [an] act or thing pertaining to [an] occupation so classified," as stated in section " A " of the policy, that is to say, he was at that time an ordinary risk because he was " superintending only."

The jury's verdict for plaintiff may fairly be said to include a finding that plaintiff was deceived into signing the written " release " (in terms a release from " all claims " against the insurance company), in the belief that it was a release as to weekly indemnity only; that there was " fraud in the factum " and that plaintiff had signed a paper purporting to be his contract " but which is different from the agreement actually made in a material part, and he has been fraudulently deceived into believing that the writing is in accordance with the spoken words." Under such circumstances " there is no contract. It is void; there has been no meeting of the minds; it may be disregarded  *  *  *. Reformation is unnecessary." For, although plaintiff signed the written instrument, he did " not assent to the contract therein stated." (*Whipple* v. *Brown Brothers Co.*, 225 N. Y. 237, 241, 245, 249, 250.)

We are satisfied with the conclusions reached by the jury that the so-called release did not cover plaintiff's claim for damage caused by the injury to his eye; that plaintiff made no false representations in his application for the policy, and that the sight of plaintiff's eye was entirely lost. (*Sneck* v. *Travelers' Ins. Co.*, 88 Hun, 94; affd., 156 N. Y. 669.)

Finding no reason for disturbing the judgment other than the error of law mentioned, we conclude that the judgment appealed

from should be modified by reducing the verdict rendered to $2,000, with appropriate interest, and that as thus modified, the judgment should be affirmed, without costs.

All concur. Present — CLARK, SEARS, CROUCH, TAYLOR and SAWYER, JJ.

Judgment and order modified by reducing the verdict rendered to $2,000, with interest, and as so modified affirmed, without costs of this appeal to either party.