**James B. FRANCIS, Jr.,**
**Plaintiff-Appellant,**

v.

**INA LIFE INSURANCE COMPANY OF NEW YORK, A Cigna Company, a/k/a LICONY, Defendant-Appellee.**

**No. 347, Docket 86–7635.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 1986.

Decided Jan. 9, 1987.

Joseph P. Altman, Jr., New York City (McCormick, Dunne & Foley, New York City, of counsel), for plaintiff-appellant.

Thomas M. Laquercia, New York City (Kenneth J. Klein, Smith & Laquercia, P.C., New York City, of counsel), for defendant-appellee.

Before VAN GRAAFEILAND and PIERCE, Circuit Judges and LASKER, Senior District Judge.*

PIERCE, Circuit Judge:

I

The facts in this case are not in dispute and can be simply stated. On November 24, 1983, plaintiff-appellant, James B. Francis, Jr., fell from a ladder and severely injured his left hand. Specifically, Francis suffered lacerations of tendons, nerves, and arteries in his left wrist resulting in a 71% anatomic impairment of his left hand. However, the district court observed that "[t]he bone structure and certain other nerves, arteries and tendons remained intact." *Francis v. INA Life Insurance Co. of New York,* 638 F.Supp. 1117, 1118 (S.D. N.Y.1986).

Appellant was insured under an accident insurance policy issued by defendant-appellee, INA Life Insurance Company of New York ("LICONY"). A section of the policy dealt with loss of life or limb and provided benefits for "loss of one member." "Member" was defined to include "hand." "Loss" was defined to mean "with regard to hand or foot, *actual severance through or above the wrist or ankle joints*" (emphasis added). Francis asserted a claim for $125,000 under this provision of the policy, but it was rejected by LICONY, whereupon appellant brought suit in the New York State courts. Based upon diversity jurisdiction, the action was removed by appellee to the United States District Court for the Southern District of New York where appellee sought summary judgment, which was granted.

The sole issue on this appeal is the construction of the phrase "actual severance through or above the wrist" as used in the subject insurance policy. Appellant maintains in substance that the phrase relates both to the extent and manner of the insured's injury and requires only so much of a physical severance as accomplishes a functional severance. In other words, Francis argues, to recover an insured need only suffer the loss of use of his hand and that loss of use must occur by a significant cutting of the flesh of the limb. On the other hand, LICONY maintains that the language relates specifically to the extent of the injury and requires a literal separation of the member from the body. The district court, while not attempting to define comprehensively the degree of dismemberment necessary to trigger coverage under the policy, held that actual severance requires "substantial physical dismemberment," *id.* at 1120, and that appellant's injury was not sufficient to meet that requirment. We are in agreement with the district court's construction of the policy and hold that where, as here, the insured's bone structure and other essential parts of his wrist remained intact, the requirment of substantial physical dismemberment is not met.

II

It is not disputed that New York law governs. However, New York courts have not yet had occasion to construe the term "actual severance" at issue herein. Appellant points to a number of New York cases wherein the term "severance" was found to be ambiguous, and consequently, liability was found against the insurer because the ambiguity was resolved against the drafter of the policy. *See Mifsud v. Allstate Insurance Co.,* 116 Misc.2d 720, 456 N.Y.S.2d 316 (N.Y.City Civ.Ct.1982) (meaning of "severance" ambiguous and does not mean amputation); *Sneck v. Travelers' Insurance Co.,* 88 Hun. 94, 34 N.Y.S. 545 (N.Y. Sup.Ct.1895) (meaning of "loss by severance" uncertain and does not mean sever-

* Honorable Morris E. Lasker, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

ance in an "anatomical or technical sense"), aff'd on opinion below, 156 N.Y. 669, 50 N.E. 1122 (1898). We note that the policies in those cases construed solely the word "severance," not qualified by the adjective "actual." As discussed below, while New York courts have found the meaning of "severance" to be ambiguous, this does not imply that they similarly would find the meaning of "actual severance" to be ambiguous. Hence, we conclude that the New York cases construing the term "severance" are not dispositive herein where the issue requires the construction of the words "actual severance."

■ In the absence of direct New York authority, we must make our best estimate as to how New York's highest court would rule in this case. Brastex Corp. v. Allen International, Inc., 702 F.2d 326, 330 (2d Cir.1983); Cunninghame v. Equitable Life Assurance Society of the United States, 652 F.2d 306, 308 (2d Cir.1981). In making that determination, we are free to consider all the resources the highest court of the state could use, Merritt-Chapman & Scott Corp. v. Public Utility Dist. No. 2 of Grant County, Wash., 319 F.2d 94, 103 (2d Cir.1963), cert. denied, 375 U.S. 968, 84 S.Ct. 488, 11 L.Ed.2d 417 (1964), including decisions reached in other jurisdictions, Metz v. United Technologies Corp., 754 F.2d 63, 66 (2d Cir.1985).

Our starting point in interpreting the phrase "actual severance through or above the wrist" is to determine whether the phrase is ambiguous. Breed v. Insurance Co. of North America, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1282 (1978). An ambiguity in the terms of an insurance contract will generally be construed liberally in favor of the insured. Vargas v. Insurance Co. of North America, 651 F.2d 838, 839–40 (2d Cir.1981); Ruder & Finn Inc. v. Seabord Surety Co., 52 N.Y.2d 663, 671, 439 N.Y.S.2d 858, 862, 422 N.E.2d 518, 522 (1981). However, if the words are clear and unambiguous, they must be accorded their plain and ordinary meaning and the policy enforced as written; a court is not free to modify such

terms by judicial construction. Government Employees Insurance Co. v. Kligler, 42 N.Y.2d 863, 864, 397 N.Y.S.2d 777, 778, 366 N.E.2d 865, 866 (1977). As this court has previously stated "it is not the function of a court to rewrite insurance policies so as to provide coverage which the court might have considered more equitable." Cornellier v. American Casualty Co., 389 F.2d 641, 644 (2d Cir.1968). See also Breed, 46 N.Y.2d at 355, 413 N.Y.S.2d at 355, 385 N.E.2d at 1283.

In our view, an insurance policy which provides benefits for loss of a member and defines such loss as requiring "actual severance through ... the wrist" is not ambiguous. The plain and ordinary sense of the language indicates that it relates to the extent of an insured's injury. We are mindful that in this area of the law we do not write on an entirely clean slate. As noted, New York courts have expressed the view that policies requiring "severance" are ambiguous and should not be read literally to require amputation in the strict anatomic sense. They have held that the term "severance" relates not to the extent of an insured's injury but rather to the manner by which that injury occurred. In other words, an insured is entitled to recover for loss of use of his hand if the manner in which he lost its use was through severance. See Mifsud, 116 Misc.2d at 721, 456 N.Y.S.2d at 317; Sneck, 88 Hun. at 99, 34 N.Y.S. at 548. However, the policies construed in those cases contained language significantly different from that at issue herein. In Mifsud, the policy provided benefits where there was "severance at or above the wrist." Mifsud, 116 Misc.2d at 721, 456 N.Y.S.2d at 317 (emphasis added). The term "at or above the wrist" refers pretty clearly to the location at which the severance must occur rather than to the extent of the injury. In Sneck, the policy was found to provide indemnity for "loss by severance of one entire hand or foot." Sneck, 88 Hun. at 95, 34 N.Y.S. at 546 (emphasis added). The court emphasized that the term "one entire hand" should be accorded its ordinary meaning and considered in connection with the use to which

an entire hand was adapted. Therefore, the court reasoned, the policy was intended to cover loss of such use. Given the context in which the word "severance" appeared in each of the policies in *Mifsud* and *Sneck,* it is understandable that New York courts found the term to relate to the manner of injury.

The language at issue herein differs from the language in *Mifsud* and *Sneck* in several ways. First, it is qualified by the adjective "actual." "Actual severance" implies something more than simply "severance." While loss by "severance" might be deemed to include a functional loss of use if the manner of loss was by severance, loss by "actual severance" requires something more than loss of use. Moreover, the subject provision requires severance "through" the wrist. As we construe it, the word "through" has an unambiguous meaning which relates to the extent of the injury. In our view, the plain and ordinary connotation of the words "actual severance through" imports a definition of the extent of the injury necessary for coverage under the policy.

Our conclusion that the meaning of the term "actual severance through" is unambiguous is supported by a majority of decisions of courts in other jurisdictions. Those courts have found this language to be unambiguous and to require literal separation of the member from the body. *Reid v. Life Insurance Co. of North America,* 718 F.2d 677, 682 (4th Cir.1983) (denying coverage where leg not severed from body and no permanent severance of muscles, nerves, blood vessels, lymph vessels, skin, or other connective tissue); *Juhlin v. Life Insurance Co. of North America,* 301 N.W.2d 59, 61 (Minn.1980) (denying coverage where loss of use resulted from spinal injury and subsequent paralysis); *Traverse v. World Service Life Insurance Co.,* 436 F.Supp. 810, 812 (W.D.Okla.1977) (denying coverage for loss of use of hands); *Boyes v. Continental Insurance Co.,* 139 Ga. App. 609, 229 S.E.2d 75 (1976) (denying coverage for loss of use of arm); *Sitzman v. John Hancock Mutual Life Insurance Co.,* 268 Or. 625, 522 P.2d 872 (1974) (deny-

ing coverage where loss of use of feet resulted from severance of spinal cord); *Murray v. Insurance Co. of North America,* 490 S.W.2d 250 (Tex.Civ.App.1973) (denying coverage where loss of use of feet and legs resulted from severance of spinal cord). In fact, this circuit, although not presented directly with the issue of the meaning of "actual severance through," in construing a Vermont insurance policy, indicated that such a provision was unambiguous and required amputation of the limb from the body. *Cornellier,* 389 F.2d at 643.

Only a minority of courts that have been confronted with the construction of "actual severance" have held that the phrase does not require total physical dismemberment. For example, in *Reliance Insurance Co. v. Kinman,* 252 Ark. 1168, 483 S.W.2d 166, 171 (1972), the court found the term to be ambiguous, a conclusion with which we do not agree, and consequently construed the policy in favor of the insured against the drafter. Therein, the court found that "actual severance" could be interpreted as either physical severance or as functional severance. In our view, the term relates only to physical severance. In *Neer v. Fireman's Fund, American Life Insurance Co.,* 103 Wash.2d 316, 692 P.2d 830, 833 (1985), the court construed a slightly different but analogous term, *"complete severance through or above the ankle joint,"* to include loss of use of feet by severance of the spinal column. However, in reaching the decision that "complete severance" includes a loss of use or function, the *Neer* court drew upon cases which construed policies with only the word "severance." *See id.,* 692 P.2d at 833–34. As noted, it is our view that these terms have different and distinct meanings, and therefore we find the *Neer* case unpersuasive.

Based on the foregoing analysis, we believe New York's highest court would find the term "actual severance through ... the wrist" to be unambiguous and to require more than a functional loss of use. Under New York law, its courts are bound to adhere to the plain language of insurance

contracts if unambiguous. *State Farm Mutual Automobile Insurance Co. v. Westlake*, 35 N.Y.2d 587, 591, 364 N.Y.S.2d 482, 485, 324 N.E.2d 137, 139 (1974); *HS Equities, Inc. v. Hartford Accident & Indemnity Co.*, 609 F.2d 669, 673–74 (2d Cir. 1979). As discussed, the plain and ordinary sense of that language relates to the extent of the insured's injury. Moreover, the weight of authority in other jurisdictions comports with this outcome; only a minority of jurisdictions have reached different conclusions. Finally, the New York Court of Appeals, in interpreting "actual severance through," would not be bound by those New York cases which construe "severance" to include loss of use since those cases are distinguishable.

### III

Having concluded that loss by "actual severance through" relates to the extent of the loss an insured must suffer and that such extent must be more than simply a loss of use or function, we are faced with the question of the extent of severance necessary to come within the scope of the policy. We do not now undertake to provide a precise definition of the degree to which the limb must be severed from the body. We are in agreement with the district court that substantial physical dismemberment is necessary. Whether total separation of the member from the body or some degree of physical dismemberment short of total separation is required will best be decided as cases reach the courts in the future. However, in this case, for the purpose of construing the challenged language herein, we hold that appellant did not suffer substantial physical dismemberment as a result of his serious accident. The record indicates that appellant suffered multiple glass lacerations of the left wrist involving laceration of multiple tendons, nerves and arteries. However, appellant's bone structure and certain other nerves, arteries, and tendons remained intact. Under these circumstances, the district court properly concluded that no substantial physical dismemberment had occurred.

The judgment of the district court dismissing appellant's complaint is affirmed.