990 F.2d 44
 Prod.Liab.Rep. (CCH) P 13,455
LEON'S BAKERY, INCORPORATED, Plaintiff-Appellant,
v.
GRINNELL CORPORATION, Defendant-Appellee-Third-Party-Plaintiff,
v.
INDUSTRIAL ELECTRIC SERVICE, INC., Third-Party-Defendant-Appellee.
 No. 620, Docket 92-7855.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 4, 1993.
Decided March 31, 1993.
 
 Mark T. Mullen, New York City (Kenneth Bloom, Cozen & O'Connor, New York City, on the brief), for plaintiff-appellant.
 Alison L. Bonds, New Haven, (R. Bradford Fawley, Eric E. Grondahl, Murtha, Cullina, Richter & Pinney, on the brief), for defendant-appellee-third-party-plaintiff.
 Before: KEARSE, ALTIMARI, and JACOBS, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiff Leon's Bakery, Incorporated ("Leon"), whose business property was damaged by fire, appeals from a final judgment of the United States District Court for the District of Connecticut, Jose A. Cabranes, Judge, dismissing its complaint seeking to recover for property damage and lost profits from defendant Grinnell Corporation ("Grinnell") because of the malfunctioning of a fire-detection and sprinkler system manufactured by Grinnell. The district court granted summary judgment in favor of Grinnell on the ground that Leon's claims were foreclosed by provisions in the contract between Leon and Grinnell. On appeal, Leon contends principally that the district court erred in failing to apply Connecticut law, and that under that law the contract clauses limiting liability were unenforceable. We disagree and affirm the judgment.
 
 I. BACKGROUND
 
 2
 The following facts are not in dispute. Leon is a Connecticut corporation that produces fresh dough, baked goods, and frozen baked goods, which it distributes to supermarkets and retail bakeries. Prior to 1984, it enlarged its operations by installing several large freezers and expanding its loading dock. Its then-existing sprinkler system did not reach the new freezers and loading dock, and Leon was informed by its insurance carrier that unless it installed a fire protection system to protect these new items, its insurance premiums would increase sharply. Accordingly, Leon contacted Grinnell, a Delaware corporation in the business of the design, manufacture, sale, installation, and maintenance of fire protection systems, to inquire into the purchase and installation of a sprinkler and fire detection system.
 
 
 3
 In March 1984, Grinnell submitted a proposal to install sprinklers and heat detectors, inter alia, in connection with the new freezers and loading dock area. The proposal was accompanied by a document entitled "General Terms and Conditions of Grinnell Fire Protection Systems Company, Inc." ("Terms and Conditions"), which contained a provision for a one-year warranty against defects in materials or workmanship ("Warranty"), and a provision limiting Grinnell's liabilities ("Limitation Clause") to those set forth in the Warranty:
 
 LIMITATIONS OF LIABILITY
 
 4
 In no event shall Seller be liable for special or consequential damages and Seller's liability on any claim whether or not based in contract or in tort or occasioned by Seller's active or passive negligence for loss or liability arising out of or connected with this contract, or any obligation resulting therefrom, or from the manufacture, fabrication, sale, delivery, installation, or use of any materials covered by this contract, shall be limited to that set forth in the paragraph entitled "Warranty".
 
 WARRANTY
 
 5
 Seller agrees that for a period of one (1) year after completion of said installation it will, at its expense, repair or replace any defective materials or workmanship supplied or performed by Seller. Upon completion of the installation, the system will be turned over to the Purchaser fully inspected, tested and in operative condition. As it is thereafter the responsibility of the Purchaser to maintain it in operative condition, it is understood that the Seller does not guarantee the operation of the system. Seller further warrants the products of other manufacturers supplied hereunder, to the extent of the warranty of the respective manufacturer.
 
 
 6
 ALL OTHER EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS OR OTHERWISE ARE HEREBY EXCLUDED.
 
 
 7
 The proposal, including the Terms and Conditions, was accepted by Leon by purchase order dated April 6, 1984.
 
 
 8
 Thereafter, Leon hired third-party-defendant Industrial Electric Service, Inc. ("Industrial Electric"), to install the fire-detection portion of the system pursuant to Grinnell's design and under Grinnell's supervision. Grinnell installed the sprinkler portion of the system. Installations were completed in January 1985. Thereafter, Leon had the sole responsibility for inspection, maintenance, and repair of the system.
 
 
 9
 In January 1989, there was a fire in Leon's freezer and loading dock areas, causing extensive damage. Leon recovered various amounts from its insurer, including $200,436 for real property damage, $1,119,173 for personal property damage, $843,601 for loss of "business earnings expense," $298,618 for "extraordinary expense," and $743,872 for "extra expense." The insurer was subrogated to Leon's claims against third parties for these amounts.
 
 
 10
 In March 1991, Leon commenced the present action against Grinnell, asserting (a) a claim under Connecticut's Product Liability Act, Conn.Gen.Stat. § 52-572m et seq. (1991), on theories of strict liability, negligence, and breach of implied and express warranties, and (b) a claim of breach of implied warranty under the Connecticut version of the Uniform Commercial Code, Conn.Gen.Stat. §§ 42a-2-314 and 42a-2-315 (1990). In addition to seeking, on behalf of its insurer, the amounts it had recovered from the insurer, Leon sought damages including $1,000 for real property damage, $72,053 for "business earnings expense," and $2,118,000 for "lost net profit due to lost sales." Grinnell impleaded Industrial Electric.
 
 
 11
 Following a period of discovery, Grinnell moved for summary judgment on the principal grounds (1) that the fire occurred approximately four years after installation of its system, the Limitation Clause disclaimed all liability not encompassed by the Warranty, and the Warranty, in turn, limited Grinnell's liability to repairs or replacements on account of defective materials or workmanship for one year after installation; and (2) that Leon's claims for commercial losses were not cognizable in a product liability suit under Connecticut law. In opposition, Leon argued, inter alia, (a) that the contract's Limitation Clause was unenforceable under Connecticut law, and (b) that the terms of the Warranty should not be enforced because the Warranty "failed of its essential purpose," the contract having contained a separate promise to provide a fire suppression system in working condition, and the breach of that promise being undiscoverable due to a latent defect.
 
 
 12
 In an oral ruling, the district court rejected all of Leon's contentions and granted Grinnell's motion for summary judgment dismissing the complaint. The court found it unnecessary to decide whether or not "commercial" losses may be recovered under Connecticut's Product Liability Act because
 
 
 13
 the parties in this case had explicitly contracted to limit defendant's liability for any deficiency in the manufacture, fabrication, sale, delivery, installation, use, or operation of the fire alarm and suppression system to a replacement of defective materials or workmanship within one year of installation.
 
 
 14
 (Hearing Transcript, June 8, 1992, at 25.) The court found that Leon's claim of unreasonably unsafe or negligent design was plainly excluded by the contract's limitation. It noted that "[a]s a general proposition, courts will enforce a limitation on products liability in a contract between commercial parties" (id. at 26), and that the considerations underlying this rule include the facts that a commercial customer's potential losses can be enormous and that alarm manufacturers have little or no control over the conditions in which the alarms are used after installation, and the judgment that alarm manufacturers should not be treated as insurers. The court rejected Leon's contentions that the Limitation Clause was unconscionable and that the Warranty failed of its essential purpose, concluding that "the provisions of the contract of sale are easily reconciled: any failure to provide a system in operative condition could be cured by replacement of defective parts or workmanship within one year of installation." (Id. at 27.)
 
 
 15
 Accordingly, the court found no basis for declining to enforce the terms of the contract between Leon and Grinnell. Grinnell's third-party claim against Industrial Electric was eventually dismissed as moot. Final judgment was entered, and this appeal followed.
 
 II. DISCUSSION
 
 16
 On appeal, Leon contends principally that the district judge failed to apply Connecticut law, and it pursues its contentions that under Connecticut law, (a) contractual disclaimers of strict liability or liability for negligence are not permitted, and (b) the Warranty should not have been enforced because it failed of its essential purpose. We reject the contention that the court did not apply Connecticut law, and we conclude that it did not err in ruling that the Limitation Clause and the Warranty were enforceable.
 
 A. The District Court's Choice of Law
 
 17
 In the present case, the parties agree that Connecticut law governs, and the record does not support Leon's suggestion that the district court believed otherwise. A prior complaint by Leon against Grinnell had been dismissed by the court on the ground that Connecticut statutes provided the exclusive remedies for the claims asserted. The summary judgment motion granted in the present case was grounded in part on the interpretation of Connecticut statutes. And the court, in announcing its decision on that motion, cited a Connecticut case in rejecting Leon's contention that the contract disclaimers were not sufficiently visible, and commented on Grinnell's failure to cite any Connecticut cases directly applicable to disclaimers regarding alarm systems. We see no indication that the district court meant to apply any law other than the law of Connecticut.
 
 
 18
 The Connecticut Supreme Court, however, has never addressed the enforceability of a contract disclaimer of tort liability in the sale or installation of a fire protection system, and the district court was thus required to determine how it believed that court would rule if the issue were before it. See, e.g., Plummer v. Lederle Laboratories, 819 F.2d 349, 355 (2d Cir.), cert. denied, 484 U.S. 898, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). In making such a determination, a federal court is free to consider all of the resources to which the highest court of the state could look, including decisions in other jurisdictions on the same or analogous issues. See, e.g., Calvin Klein Ltd. v. Trylon Trucking Corp., 892 F.2d 191, 195 (2d Cir.1989); Francis v. INA Life Insurance Co., 809 F.2d 183, 185 (2d Cir.1987).
 
 
 19
 Accordingly, the district court in the present case referred to decisions in other jurisdictions as to the enforceability of limitation-of-liability clauses in contracts involving fire alarms and burglar alarms, and it found that such clauses are commonly ruled enforceable. It plainly inferred that Connecticut would conclude that the Limitation Clause and Warranty in the Leon-Grinnell contract were not invalid. Reviewing that determination de novo, see Salve Regina College v. Russell, 499 U.S. 225, ----, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991), we conclude that the district court did not err.
 
 
 20
 B. Enforceability of the Limitation of Liability
 
 
 21
 From all that the parties have cited to us and from all that our own research has unearthed, it appears that all of the courts that have considered the validity of limitation-of-liability clauses in contracts for the provision of fire alarm systems have found those clauses to be permissible. See, e.g., Shaer Shoe Corp. v. Granite State Alarm, Inc., 110 N.H. 132, 262 A.2d 285, 286-87 (1970) (applying New Hampshire law and citing cases from Texas, California, and Alabama); Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 553-54, 583 N.Y.S.2d 957, 962-63, 593 N.E.2d 1365, 1370-71 (1992), and cases cited therein (limitation-of-liability clauses in fire alarm contracts enforceable against claim of ordinary negligence, though not against claim of gross negligence); Abel Holding Co. v. American District Telegraph Co., 138 N.J.Super. 137, 145-54, 350 A.2d 292, 296-302 (Law Div.1975), aff'd, 147 N.J.Super. 263, 371 A.2d 111 (App.Div.1977). Apparently a greater number of courts have been concerned with the enforceability of such clauses in contracts for the installation and servicing of burglar alarm systems, and those courts have similarly upheld clauses limiting liability for the failure of such systems, see, e.g., E.H. Ashley & Co. v. Wells Fargo Alarm Services, 907 F.2d 1274, 1278 (1st Cir.1990) (collecting cases from six states holding that contract clauses limiting liability of burglar alarm services were enforceable); Schrier v. Beltway Alarm Co., 73 Md.App. 281, 287-88, 533 A.2d 1316, 1319 (1987) (collecting cases from 14 jurisdictions so holding); St. Paul Fire & Marine Insurance Co. v. Guardian Alarm Co., 115 Mich.App. 278, 320 N.W.2d 244, 247 (1982); Colnaghi U.S.A., Ltd. v. Jewelers Protection Services, Ltd., 81 N.Y.2d 821, 595 N.Y.S.2d 381, 611 N.E.2d 282 (1993); Guthrie v. American Protection Industries, 160 Cal.App.3d 951, 954-55, 206 Cal.Rptr. 834, 836 (1984). See generally Annotation, Liability of Person Furnishing, Installing, or Servicing Burglar or Fire Alarm System for Burglary or Fire Loss, 37 A.L.R.4th 47, 89-97 (1985). The only Connecticut case of which we are aware on such an issue is a trial-level decision that is wholly in accord with these authorities. See Hanover Insurance Co. v. American District Telegraph Co., 5 Conn.L.Rptr. 324, 1991 WL 269106 (Conn.Super.Ct.1991) (rejecting contention that contract clause limiting the liability of an allegedly negligent seller and monitor of burglar alarm system was unconscionable).
 
 
 22
 The rationale for upholding an agreement between the purchaser and the manufacturer of an alarm system to limit the liability of the manufacturer is that
 
 
 23
 [m]ost persons, especially operators of business establishments, carry insurance for loss due to various types of crime. Presumptively insurance companies who issue such policies base their premiums on their assessment of the value of the property and the vulnerability of the premises. No reasonable person could expect that the provider of an alarm service would, for a fee unrelated to the value of the property, undertake to provide an identical type coverage should the alarm fail to prevent a crime.
 
 
 24
 Guthrie v. American Protection Industries, 160 Cal.App.3d at 954, 206 Cal.Rptr. at 836. Even where the contract is not only for the sale and installation of a burglar alarm system but is also for its maintenance or monitoring, if the fee paid is not sufficiently high to include a premium for theft insurance, a clause limiting the alarm service company's liability in the event the alarm system does not function properly is not unconscionable. See, e.g., E.H. Ashley & Co. v. Wells Fargo Alarm Services, 907 F.2d at 1278-79 (not inappropriate for the parties to place on user the onus of " 'buy[ing] any desired amount of insurance at appropriate rates' ").
 
 
 25
 Though the events against which burglar alarms and fire alarms, respectively, are intended to provide protection differ somewhat, in that burglaries are always criminal interventions whereas fires may be either criminal or accidental, we think the rationale for permitting the provider of a burglar alarm system to limit its liability is equally applicable to the provider of a fire alarm system. The supplier of either type of system is paid for its equipment and services, and the price does not generally include a sum designed to anticipate the possible need to pay the purchaser the value of the property that the system is to protect. The owner or custodian of the property is in a far better position than the alarm system seller to know the property's value and to bargain with an insurance company for appropriate coverage and an appropriate premium, and, as the New York Court of Appeals noted, the alarm seller's "limitations on liability help keep alarm services affordable," Sommer v. Federal Signal Corp., 79 N.Y.2d at 554, 583 N.Y.S.2d at 962, 593 N.E.2d at 1370.
 
 
 26
 Though Leon argues that the above line of cases does not represent the principles that would be applied by the Connecticut Supreme Court, it has not pointed to any Connecticut cases to the contrary. Rather, it argues that we should apply the principle adopted in Comind, Companhia de Seguros v. Sikorsky Aircraft Division of United Technologies Corp., 116 F.R.D. 397 (D.Conn.1987) ("Comind "). We find that case inapposite. Comind involved a complaint against the manufacturer of a helicopter that crashed. The plaintiff sought to recover the value of the helicopter, alleging that the crash was caused by the failure of part of the rotary mechanism that was supposed to hold the helicopter's blades in place. The district court, noting that "Connecticut courts have tended to take a case-by-case approach" in determining the validity of negligence disclaimers, ruled that Connecticut law precluded enforcement of the contractual provision disclaiming tort liability by the helicopter's manufacturer. Id. at 419-20. Though the Comind court may have drawn the correct inference as to how the Connecticut Supreme Court would treat a limitation-of-liability clause in an action to recover for losses sustained in an event that was caused by the device defectively manufactured by the defendant, we think the district court in the present case properly inferred that the Connecticut courts would treat a limitation-of-liability clause in a fire alarm case differently. A fire alarm, though designed to detect the presence of fire, and thereby to limit the damage caused by the fire, is not itself the cause of the event or the agent of harm. Cf. Vastola v. Connecticut Protective System, Inc., 133 Conn. 18, 47 A.2d 844, 845 (1946) (ordering dismissal of negligence claim on ground that allegedly improperly installed burglary prevention system was not proximate cause of burglary). Thus, a fire alarm is less like the Comind helicopter, which itself was the cause of the crash, than it is like the burglar alarm in Hanover Insurance Co. v. American District Telegraph Co., 5 Conn.L.Rptr. 324, which did not cause the burglary but allegedly failed to result in an appropriate response by the monitor to the presence of the burglar. We conclude that if faced with contract provisions in which the buyer and the manufacturer of a fire alarm system agreed that the manufacturer's liability would be limited, the Connecticut Supreme Court would rule, similarly to the Hanover court, that the alarm manufacturer generally may validly limit its liability by an express contractual provision.
 
 
 27
 The district court in the present case properly applied this principle in granting Grinnell's motion for summary judgment. Grinnell agreed to supply and install the sprinkler and fire detection system. Leon was a commercial entity presumably aware of the risk involved in reliance on such a system. Though Leon claims that Grinnell did not instruct it with respect to inspection and maintenance of the system, it is undisputed that the contract allocated the risks between the parties and that it explicitly shifted the responsibility for service and maintenance after installation onto Leon. Leon presented no evidence from which it could be inferred either that the price it paid for the system included an insurance premium to Grinnell or that the Limitation Clause and Warranty were not elements of the contract that Grinnell bargained for and thus factored into its quoted price. Nor does the record suggest that Leon believed it was obtaining fire insurance from Grinnell. Rather, it is undisputed that Leon's desire to install a fire protection system in its new freezers and loading dock area was triggered by advice from its insurer that without such a system it faced a steep increase in its fire insurance premiums. The plain implication was that, by purchasing the Grinnell system, Leon expected to have, at modest premiums, full insurance coverage from its insurer.
 
 
 28
 Nor did the district court err in inferring that the Connecticut Supreme Court would uphold the contract's Limitation Clause against a claim of strict liability. The latter court, adopting the approach set forth in Restatement (Second) of Torts § 402A (1965), has stated that in order to impose strict liability on a manufacturer, it must be shown, inter alia, that the product was sold "in a defective condition unreasonably dangerous to the user or consumer or to his property, [and] that it caused physical harm to the consumer or user or to his property." Rossignol v. Danbury School of Aeronautics, Inc., 154 Conn. 549, 562, 227 A.2d 418, 424 (1967). Leon has presented no evidence to suggest that the Grinnell fire protection system itself was unreasonably dangerous or that it caused the fire leading to Leon's losses, and we agree with the district court's conclusion that a contractual limitation of liability with respect to a device alleged merely to have failed to detect or impede fire may be enforced against a claim of strict liability.
 
 C. Leon's Breach-of-Warranty Contentions
 
 29
 We also reject Leon's contention that, because the alleged defect in the sprinkler system did not become apparent until after the Warranty had expired, the Warranty "failed of its essential purpose, thus becoming inoperative." (Leon brief on appeal at 23.) Leon had the right to reject the system if it failed to perform when it was tested after installation was complete. It also agreed to assume full responsibility, after installation, for maintenance of the system. At a minimum, this agreement placed on Leon, not Grinnell, the responsibility for periodic inspections to uncover any latent defects in the system. We see no basis whatever for believing that the Connecticut Supreme Court would relieve Leon of its own contractual responsibilities and allocation of risks.
 
 CONCLUSION
 
 30
 We have considered all of Leon's arguments on this appeal and have found them to be without merit. The judgment of the district court is affirmed.